IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| TAYLOR DANE WILLIAMS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | 2:14-cv-02028-LSC |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OF OPINION**

## I.     Introduction

The plaintiff, Taylor Dane Williams, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for Supplemental Security Income ("SSI"). Mr. Williams timely pursued and exhausted his administrative remedies and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Mr. Williams was twenty-three years old at the time of the Administrative Law Judge's ("ALJ's") decision, and he has a high school education and no past relevant work. (Tr. at 19, 147). Mr. Williams claims that he became disabled on July 2, 2011, due to status post right sciatic nerve resection, status post right femoral neck and status post left ulnar fractures, depression, and anxiety. (Tr. at 15).

The Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled and thus eligible for DIB or SSI. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The evaluator will follow the steps in order until making a finding of either disabled or not disabled; if no finding is made, the analysis will proceed to the next step. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The first step requires the evaluator to determine whether the plaintiff is engaged in substantial gainful activity ("SGA"). *See id.* §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the plaintiff is not engaged in SGA, the evaluator moves on to the next step.

The second step requires the evaluator to consider the combined severity of the plaintiff's medically determinable physical and mental impairments. *See id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An individual impairment or combination of impairments that is not classified as "severe" and does not satisfy the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 will result in a finding of not disabled. *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). The decision depends on the medical evidence contained in the record. *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971) (concluding that "substantial medical

evidence in the record" adequately supported the finding that plaintiff was not disabled).

Similarly, the third step requires the evaluator to consider whether the plaintiff's impairment or combination of impairments meets or is medically equal to the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the criteria of a listed impairment and the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 are satisfied, the evaluator will make a finding of disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

If the plaintiff's impairment or combination of impairments does not meet or medically equal a listed impairment, the evaluator must determine the plaintiff's residual functional capacity ("RFC") before proceeding to the fourth step. *See id.* §§ 404.1520(e), 416.920(e). The fourth step requires the evaluator to determine whether the plaintiff has the RFC to perform the requirements of his past relevant work. *See id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the plaintiff's impairment or combination of impairments does not prevent him from performing his past relevant work, the evaluator will make a finding of not disabled. *See id.*

The fifth and final step requires the evaluator to consider the plaintiff's RFC, age, education, and work experience in order to determine whether the

plaintiff can make an adjustment to other work. *See id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the plaintiff can perform other work, the evaluator will find him not disabled. *Id.*; *see also* 20 C.F.R. §§ 404.1520(g), 416.920(g). If the plaintiff cannot perform other work, the evaluator will find him disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 416.920(a)(4)(v), 416.920(g).

Applying the sequential evaluation process, the ALJ found that Mr. Williams has not engaged in SGA since the SSI application date, July 13, 2011. (Tr. at 15.) According to the ALJ, Plaintiff's status post right sciatic nerve resection, depression, anxiety, and status post right femoral neck and status post left ulnar fractures are considered "severe" based on the requirements set forth in the regulations. (*Id.*) However, she found that these impairments neither meet nor medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*) The ALJ determined that Plaintiff has the following RFC: to perform light work as defined in 20 C.F.R. § 416.967(b) except he can lift and carry twenty pounds occasionally and ten pounds frequently; sit for six hours in an eight-hour day; stand and walk for two hours in an eight-hour day; never climb ladders, ropes, or scaffolds, but occasionally climb ramps and stairs; never kneel or crawl, but occasionally balance, stoop, and crouch; he must avoid all exposure to workplace hazards such as dangerous machinery and unprotected heights; he can

maintain attention and concentration for two hours at a time; perform simple, routine and repetitive tasks and must have the option to sit or stand at his discretion. (Tr. at 15-16.)

According to the ALJ, Mr. Williams has no past relevant work, is a "younger individual," and has "at least a high school education" and is able to communicate in English, as those terms are defined by the regulations. (Tr. at 19.) The ALJ determined that "[t]ransferability of job skills is not an issue because the claimant does not have past relevant work." (*Id.*) Using the testimony of a vocational expert ("VE"), the ALJ reached the conclusion that there are jobs that exist in significant numbers in the national economy that Mr. Williams can perform, considering his age, education, work experience, and RFC, such as cashier, ticket seller, and bench assembler. (Tr. at 20.) The ALJ concluded his findings by stating that Plaintiff "has not been under a 'disability,' as defined in the Social Security Act, since July 13, 2011, the date the application was filed." (*Id.*)

## II.   Standard of Review

This Court's role in reviewing claims brought under the Social Security Act is a narrow one.  The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied.  *See Stone*

*v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)). This Court gives deference to the factual findings of the Commissioner, provided those findings are supported by substantial evidence, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).

Nonetheless, this Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)). "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if this Court finds that the proof preponderates against the Commissioner's decision, it must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400 (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

However, no decision is automatic, for "despite th[e] deferential standard [for review of claims], it is imperative that th[is] Court scrutinize the record in its

entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987) (citing *Arnold v. Heckler*, 732 F.2d 881, 883 (11th Cir. 1984)). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

## III. Discussion

Mr. Williams alleges that the ALJ's decision should be reversed and remanded for one reason: the ALJ erred in giving no weight to the Medical Source Statement (Mental) ("MSS") submitted by his treating psychiatrist, Dr. Donald Paoletti. For the reason that follow, Plaintiff's argument lacks merit.

The ALJ must state with particularity the weight given to different medical opinions and the reasons for doing so. *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987). The weight that an ALJ should give to a medical opinion regarding the nature and severity of a claimant's impairments depends, among other things, upon the examining and treating relationship the medical source had with the claimant, the evidence the medical source presents to support the opinion, how consistent the opinion is with the record as a whole, and the specialty of the medical source. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d). Generally, a treating physician's opinion is entitled to more weight, and an ALJ must give good reasons for rejecting it. *See id.* § 416.927(c)(2). Thus, a treating physician's testimony is entitled to

"substantial or considerable weight unless 'good cause' is shown to the contrary." *Crawford*, 363 F.3d at 1159 (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)) (internal quotations omitted). "Good cause" exists for an ALJ to not give a treating physician's opinion substantial weight when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips*, 357 F.3d at 1241 (citing *Lewis*, 125 F.3d at 1440); *see also Edwards v. Sullivan*, 937 F.2d 580, 583-84 (11th Cir. 1991) (holding that "good cause" existed where the opinion was contradicted by other notations in the physician's own record). The ALJ may reject *any* medical opinion, if the evidence supports a contrary finding. *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985).

The Court must also be aware of the fact that opinions such as whether a claimant is disabled, the claimant's RFC, and the application of vocational factors "are not medical opinions, . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability." 20 C.F.R. §§ 404.1527(e), 416.927(d). The Court is interested in the doctors' evaluations of the claimant's "condition and the medical consequences thereof, not their opinions

of the legal consequences of his [or her] condition." *Lewis*, 125 F.3d at 1440. Such statements by a physician are relevant to the ALJ's findings, but they are not determinative, as it is the ALJ who bears the responsibility for assessing a claimant's RFC. *See, e.g.,* 20 C.F.R. § 404.1546(c).

Dr. Paoletti saw Plaintiff only three times: in February 2011, January 2012, and December 2012. (Tr. at 453-57.) In May 2012, after two visits with Plaintiff, Dr. Paoletti completed the MSS, in which he indicated that Plaintiff had moderate impairment of his ability to respond appropriately to supervisors, co-workers and the general public; a moderate impairment of the ability to use judgment in simple one-and-two-step work related decisions; a marked impairment of the ability to use judgment in detailed or complex work related decisions and a moderate impairment of the ability to deal with changes in a routine work setting. (Tr. at 453.) He further opined that Plaintiff had a moderate impairment of his ability to understand, remember and carry out simple one-or-two-step instructions and a mild impairment of the ability to maintain activities of daily living and moderate restrictions on the ability to understand, remember and carry out detailed complex instructions; respond to customary work pressure and maintain attention, concentration or pace for periods of at least two hours. (Tr. at 454.) Dr. Paoletti pointed out that Plaintiff's attention and concentration was markedly impaired and

this affects his ability to pay attention to detail and follow through on tasks to completion. (*Id.*) He also noted that Plaintiff's impulsivity could affect his judgment. (*Id.*)

The ALJ gave no weight to Dr. Paoletti's MSS, explaining that it was "not consistent whatsoever with the objective medical evidence as a whole." (Tr. at 18.) For the reasons that follow, the ALJ had good cause to discount the opinion.

First, the ALJ found Plaintiff had received very little treatment for his alleged mental impairments. (Tr. at 18, 247, 455-458). Indeed, Plaintiff admits the evidence does not reflect "an overwhelming amount of psychiatric treatment" and shows "psychiatric treatment over a brief period of time." (Doc. 9 at 10.) Such a limited treatment history is inconsistent with disability. *See Watson v. Heckler*, 738 F.2d 1169, 1172-73 (11th Cir. 1984).

Moreover, Plaintiff's limited mental health treatment records from his visits with Dr. Paoletti, dated February 2011, January 2012, and December 2012, do not support Dr. Paoletti's opinion. (Tr. at 247, 455-458). When Dr. Paoletti treated Plaintiff, he simply prescribed medication. (Tr. at 18, 247, 455-458). In February 2011, Dr. Paoletti indicated that Plaintiff's medication was working well, his mood was generally stable, and his anxiety was controlled. (Tr. at 247). Dr. Paoletti next saw Plaintiff nearly a year later, in January 2012, about six months after his motor

vehicle accident and alleged disability onset date. (Tr. at 455). While Plaintiff's mood was "down" and he was "bored" and worried about the future, nothing in Dr. Paoletti's treatment notes demonstrates the marked limitations he assessed in May 2012 in the MSS. (Tr. at 455). Similarly, Dr. Paoletti's treatment notes from December 2012, seven months after the MSS was submitted, do not support such limitations. (Tr. at 458). In December 2012, Plaintiff's mood was stable, he was less irritable, and though he was quick-tempered, he could stay in control. (Tr. at 458). Plaintiff's limited treatment records from his visits with Dr. Paoletti support the ALJ's decision to discount Dr. Paoletti's MSS. (Tr. at 247, 455-58).

In addition, the ALJ found Plaintiff's own testimony inconsistent with Dr. Paoletti's opinion. (Tr. at 18, 39-40). At the hearing, Plaintiff testified that his only limitation from depression is that he "gets down on [himself]" and tires easily. (Tr. at 39). While he complained of nervousness and shortness of breath caused by anxiety, he also testified that his medication helps. (Tr. at 40). Effective control of symptoms undermines a claim of disability. *See McSwain v. Bowen*, 814 F.2d 617, 620, n.1 (11th Cir. 1987). Plaintiff's testimony is simply not consistent with the marked limitations Dr. Paoletti indicated in his MSS. (Tr. at 18, 39-40, 453-454).

Additionally, the opinions of the one-time consultative examiner and the non-examining State agency physician fail to support the drastic limitations opined

11

by Dr. Paoletti in May 2012. As noted by the ALJ, Mr. Williams underwent a Mental Status Evaluation ("MSE") with William Beidleman, Ph.D., in October 2011, during which time Dr. Beidleman conducted a mental status examination and interview of Plaintiff. (Tr. at 423-25.) At the examination Plaintiff emphasized that his main barrier to employment were his physical limitations. (Tr. at 425.) As a result of the MSE, Dr. Beidleman diagnosed a history of attention deficient hyperactivity disorder, adjustment disorder with mixed emotional features and a probable history of dysthymic disorder, early onset. (*Id.*) Dr. Beidleman indicated that Plaintiff was not in any focused mental health treatment at the time. (*Id.*) He concluded that Plaintiff appeared able to function independently, remember simple job instructions, respond appropriately to fellow employees and supervisors, and cope with ordinary work pressures. (*Id.*)

Dr. Beidleman's examination simply evinced very little in the way of mental abnormalities. The ALJ gave great weight to Dr. Beidleman's opinion because it was consistent with the objective medical evidence as well as his own examination findings. (Tr. at 18, 423-425). Dr. Beidleman's opinion constitutes substantial evidence supporting the ALJ's decision. *See* 20 C.F.R. § 416.927(c); *Richardson v. Perales*, 402 U.S. 389, 402 (1971) (stating that "a written report by a licensed physician who has examined the claimant and who sets forth . . . his medical

findings in his area of competence may . . . constitute substantial evidence supportive of a finding by the [ALJ] adverse to the claimant").

Finally, non-examining State agency psychologist Dr. Robert Estock's opinion supports the ALJ's decision to discount Dr. Paoletti's opinion. (Tr. at 19, 438, 440, 442-444). State agency consultants are experts in disability evaluation whose opinions may be entitled to great weight if supported by the evidence in the record. *See* 20 C.F.R. § 416.927(e)(2); Social Security Ruling 96-6p, 1996 WL 374180, at *2-3 (S.S.A); *see also Forrester v. Comm'r of Soc. Sec.*, 455 F. App'x 899, 902-3 (11th Cir. 2012) (concluding that the ALJ did not err in giving more weight to the non-examining physician's opinion than to the treating physician's opinion when the treating physician's opinion was contradicted by the record). Dr. Estock reviewed the objective medical evidence in October 2011, including not only Dr. Beidleman's findings but also Plaintiff's treatment records at that time, which reflected his minimal mental health treatment. (Tr. at 440). Dr. Estock determined Plaintiff had no more than moderate mental limitations. (Tr. at 438, 442-444.) He opined that an appropriate limitation would be that the plaintiff could understand and remember simple job instructions but not detailed ones; that he could carry out simple instructions but not detailed ones; that the plaintiff could attend and concentrate for two hour periods on simple tasks in a regular work day with

customary rest breaks; and that the changes in the work place should be infrequent, well explained and gradually introduced and that the plaintiff may need help making realistic plans and goals. (Tr. at 444.) The ALJ afforded great weight to that opinion because she found it consistent with the objective medical evidence as a whole. (Tr. at 19).

Plaintiff argues that Dr. Beidleman examined Plaintiff only once and Dr. Estock did not examine Plaintiff, but for the reasons already explained, because there was good cause for the ALJ to discount the treating physician's opinion, nothing prevented her from giving more weight to the opinions of the one-time consultative examiner and the non-examining physician, considering the evidence supported them. Because Dr. Paoletti's MSS was not based on his own treatment notes, not supported by the other medical evidence of record, and further not supported by Plaintiff's own testimony concerning his mental impairments, substantial evidence supports the ALJ's decision not to adopt Dr. Paoletti's opinion.

## IV.   Conclusion

Upon review of the administrative record, and considering all of Mr. Williams' arguments, the Court finds the Commissioner's decision is supported by

substantial evidence and in accord with the applicable law. A separate order will be entered.

      **DONE** AND **ORDERED** ON DECEMBER 16, 2015.

<div style="text-align:right">
_____<br>
L. SCOTT COOGLER<br>
UNITED STATES DISTRICT JUDGE<br>
160704
</div>